**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHAH BANO,

Plaintiff,

v.

BRIGHT HORIZONS IMF, *et al.*,

Defendants.

Civil Action No. 20-0064 (CKK)

**MEMORANDUM OPINION**[1]

This matter is before the Court on Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 6) and four motions filed by plaintiff: Motion for Extension of Time for Serving Defendants (ECF No. 15), Motion to Remand and [for] Oral Hearing (ECF No. 16), Plaintiff's Motion for Continuance and ECF Filing (ECF No. 26), and Motion for

[1] The Court considered the following submissions and their exhibits/attachments:

- Notice of Removal (ECF No. 1)
- Superior Court Documents (ECF No. 1-3), including plaintiff's original complaint (ECF No. 1-3 at 84, "Compl.") and the amended complaint (ECF No. 1-3 at 1, "Am. Compl.")
- Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 6)
- Motion to Dismiss the Summary Judgment/Cross Motion to [D]ispute the "Material [F]acts" (ECF No. 11, "Opp'n Part I")
- Memorandum of Points and Authorities in Support of Motion to Dismiss Defendant[s]' Summary Judgment Request (ECF No. 12, "Opp'n Part II")
- Plaintiff's Answer to Demurrer (ECF No. 22, "Opp'n Part III")
- Defendants' Reply Memorandum in Support of Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 18, "Reply")
- Motion to Remand and [for] Oral Hearing (ECF No. 16)
- Plaintiff's Motion for Continuance and ECF Filing (ECF No. 26)
- Motion for Court's Leave to Serve Request for Admission on Defendants (ECF No. 27)
- Defendants' Statement of Opposing Points and Authorities to Plaintiff Shah Bano's Motion [] For Continuance and ECF Filing and Motion for Court's Leave to Serve Request for Admission (ECF No. 28)

Court's Leave to Serve Request for Admission on Defendants (ECF No. 27).[2] For the reasons discussed below, the Court GRANTS defendants' motion and DENIES plaintiff's motions.[3]

**I. BACKGROUND**

The Court derives its understanding of the facts and plaintiff's legal claims from three sources. First, the Court takes judicial notice of the documents filed in the Superior Court of the District of Columbia prior to removal of this action on January 9, 2020, *see* Notice of Removal (ECF No. 1), to include plaintiff's original complaint, the amended complaint, and all exhibits attached thereto (ECF No. 1-3).

Second, in light of plaintiff's *pro se* status, for purposes of evaluating defendants' motion to dismiss, the Court considers not only the complaint, as amended, but also plaintiff's three responses to defendants' motion and their exhibits. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (noting the district court's obligation "to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss"); *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999).

[2] Plaintiff attempted to file an amended complaint on February 28, 2020. The whereabouts of the proposed amended pleading are unknown. Clerk's Office staff who have spoken with plaintiff and corresponded with her via email have asked plaintiff to submit a copy of the proposed amended pleading, and plaintiff has supplied by email a .jpg version of the front page of each document. Plaintiff neither has submitted a duplicate hard copy nor has sent a complete version of the proposed amended pleading to the email address designated for *pro se* party filings during the coronavirus pandemic. Even if plaintiff had produced a copy of her proposed amended complaint, the Court would not have considered it. Plaintiff did not submit a motion for leave to amend with a copy of the proposed amended complaint as is required under Local Civil Rule 15.1. She could not have amended her complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1), and plaintiff had not obtained defendants' written consent for purposes of Rule 15(a)(2). More importantly, by the time plaintiff attempted to amend the complaint, defendants' motion to dismiss or for summary judgment had been briefed fully.

[3] The Court also denies the motions for injunctive relief filed by plaintiff in the Superior Court on December 30, 2019. *See generally* ECF No. 1-3 at 67-81.

Third, for purposes of defendants' motion for summary judgment, the Court treats defendants' assertions of fact as admitted. In compliance with Local Civil Rule 7(h) and the Order Establishing Procedures for Cases Assigned to Judge Colleen Kollar-Kotelly (ECF No. 4, "Standing Order") ¶ 12(B), defendants have submitted their statement of material facts (ECF No. 6-1) in numbered paragraphs with citations to the portions of the record on which they rely. Although plaintiff as the non-moving party is expected to "respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied," Standing Order ¶ 12(B)(iv), she has not done so. Nevertheless, defendants cannot prevail on summary judgment unless they demonstrate that there is no material fact in dispute and that they are entitled to judgment as a matter of law. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507–08 (D.C. Cir. 2016) (noting that "the District Court may enter summary judgment only if, after fully considering the merits of the motion, it finds that it is warranted. There is no room for a judgment 'as conceded' as contemplated by Local Rule 7(b)."); Fed. R. Civ. P. 56(a). On review of plaintiff's submissions, however, the Court finds that no *material* issue of fact is in genuine dispute.

**A. Plaintiff's Employment at Bright Horizons**

**1. Bright Horizons Children's Center LLC**[4]

Bright Horizons Children's Center LLC ("Bright Horizons") provides, among other services, child care at locations worldwide. *See* Defs.' Statement of Undisputed Material Facts in Support of [their] Mot. to Dismiss or in the Alternative for Summ. J. (ECF No. 6-1, "SMF") ¶ 1. It operates the IMF Child Care Center in Washington, D.C. *Id.* ¶ 10. All of its employees are

[4] Bright Horizons Children's Centers LLC is the correct legal name for the entity plaintiff designated "Bright Horizons IMF" in the caption of her complaint. *See* Defs.' Mot. to Dismiss or in the Alternative for Summ. J. (ECF No. 6) at 1 n.1.

at-will employees, *id.* ¶ 11, whose employment "may [be] terminate[d] . . . at any time, for any reason, with or without cause," Decl. of Brianna DeMarco as Custodian of Records (ECF No. 6-4, "Custodian Decl."), Ex. B ("Employee Handbook") at 27. Bright Horizons has a Non-Discrimination and Anti-Harassment Policy, SMF ¶ 4; *see generally* Custodian Decl., Ex. A, and "encourages its employees to utilize its complaint resolution process if an employee is subjected to, or witnesses, such misconduct," SMF ¶ 5.

According to the Bright Horizons Employee Handbook, staff shall not inappropriately discipline a child by taking any of the following actions:

- Corporal punishment, including spanking;
- Shaking, jerking, squeezing, or physically indicating disapproval;
- Shaming or using humiliation, harsh/inappropriate tone of voice, or verbal abuse;
- Labeling ("bad" girl or boy) or otherwise implying that the child, rather than the behavior, is the problem;
- Using bribes, false threats, or false choices;
- Denial of food or special activities or events as a form of punishment, or forcefeeding a child;
- Retaliation or doing to the child what he or she did to someone else; and
- Punishment for soiling, wetting, or not using the toilet.

SMF ¶ 16; *see* Employee Handbook at 23. If an employee uses inappropriate discipline on a child, she may face Bright Horizons' progressive discipline including written counsel, written reprimand and termination. *See* SMF ¶ 17; *see also* Employee Handbook at 12-13, 25, 27. The form of discipline applied depends on the circumstances of a particular incident, such as the severity of the infraction, an employee's past performance, and the infraction's impact on Bright Horizon's business. SMF ¶ 18. "Discipline is imposed without regard to the protected class status of, or protected activity engaged in, by the employee in question, and any policy violation by any employee is taken seriously." *Id.* ¶ 19.

At all relevant times, Agnieszka (Agnes) Andrzejuk ("Andrzejuk") was the Director of the IMF Child Care Center and Brianna DeMarco ("DeMarco") was its Assistant Director. *See* SMF ¶¶ 2, 21. DeMarco since has become the Center's Director. *See id.* ¶ 21 n.2.

On September 18, 2017, plaintiff began her employment as a Kindergarten Prep teacher at the IMF Child Care Center. *See id.* ¶ 12; Am. Compl. (ECF No. 1-3 at 49). A Kindergarten Prep teacher was expected to interact appropriately with the children in her care, punish and discipline them in an appropriate manner, devote her full attention to their supervision, and "conduct[] herself in a way that does not jeopardize the health and safety of the children." SMF ¶ 14; *see generally* Decl. of Brianna DeMarco (ECF No. 6-3, "DeMarco Decl."), Ex. A (Job Description).

**2. December 2017 Reprimand**

On December 10, 2017, a co-teacher reported that she observed plaintiff "roughly handle a child in her care," SMF ¶ 21, and "forcefully grab[] children by their arms, causing the children to yell 'ouch' and even cry," *id.* ¶ 22. Andrzejuk was on vacation at that time, and DeMarco addressed the matter in Andrzejuk's absence. *Id.* ¶ 21. DeMarco spoke to other "teachers with knowledge of [plaintiff's] care of the children." *Id.* ¶ 23. They, too, "raised similar concerns about [plaintiff's] demeanor and general treatment of the children." *Id.* DeMarco placed plaintiff on administrative leave while the matter was investigated. *Id.* ¶ 24; *see* Opp'n Part I ¶¶ 11-12. At that time, Bright Horizons was not aware of plaintiff's pregnancy. SMF ¶ 25.

Plaintiff had an opportunity to respond to the allegations, SMF ¶ 26, and her December 10, 2017, written response in part stated:

> It came as a surprise to me that I have allegation of misconduct with "a child" on 12/7/2017. As of the first day of my duty, to this date I do not remember any misconduct with any child under my supervision. The misconduct explained by Miss Brianna is that I

> grabbed a child's hand when I was upset. I clearly do not remember any such behavior on my part. I am never upset at children, as I am there to serve them in every day goals such as eating, learning, going to the bathroom, reading, separation from parents in morning, etc. etc. I treat them with love, respect and care in a very professional manner . . . .

DeMarco Decl., Ex. D. Plaintiff "did not raise any concern in her statement, or at any time using Bright Horizons' complaint resolution process, that she was being treated differently or retaliated against because of her pregnancy." SMF ¶ 26.

"Upon review of findings of the investigation, it was determined that [plaintiff] had used loud, negative verbiage with the children under her care and communicated with them disrespectfully." *Id.* ¶ 27. Her performance was deemed unsatisfactory, *id.*, and "[b]ased on the seriousness of the conduct at issue," *id.* ¶ 28, Bright Horizons skipped the first level of progressive discipline, *id.* ¶ 29, and issued plaintiff a written reprimand instead, *id.* ¶ 28; *see* DeMarco Decl., Ex. E.

Bright Horizons imposed conditions on plaintiff's return to work. "[S]he was required to work alongside an experienced teacher from a nearby location, who would serve as a mentor and provide coaching around [plaintiff's] interactions with children." SMF. ¶ 30. Further, plaintiff "was expressly informed that any future failure to meet [Bright Horizons'] expectations surrounding the appropriate treatment of children may lead to further disciplinary action, up to and including termination." *Id.* ¶ 31.

**3. January 2018 Incident**

On January 25, 2018, a parent whose child was in plaintiff's care contacted Andrzejuk by email, *id*. ¶ 32, to express the following concerns:

> [My child] says that [she] did not want to take a nap the other day that that [she] was placed in a "cage." [She] said that [she] told the teacher [she] needed to pee but was ignored and told "I don't care" and [she] subsequently urinated on [herself]. Then [she] said that

> [she] was placed in a diaper ([she] does not wear diapers) and someone else's pants and that they washed [her] clothes and put them back on [her] after snack time. We were never notified of any of these events by the center staff. I am not sure of the facts of what happened here but [she] would have no reason to make this up. I hope there can be some clarification of what happened here.

DeMarco Decl., Ex. F at 2. The parent's subsequent email message stated:

> [The child] says [she] was kept where the aprons and paper that have paint and glue on them are. [She] says it was in the corner and it was locked. [She] said all [she] could do was look at the toothbrushes and was not given any toys. [She] was placed there because [she] did not want to take a nap. [She] says [she] could not get to the toilet because the "cabinet was locked." [She] states [she] asked two times to get out to use the bathroom. One time [she] was told no and one time [she] was told "I don't care" by [plaintiff]. [She] gives these exact details.

*Id.*, Ex. F at 1. The parents disenrolled the child because of this incident. SMF ¶ 38.

"Given the seriousness of the allegations, [plaintiff] again was placed on administrative leave" while Bright Horizons investigated the matter. *Id.* ¶ 34. Plaintiff, who disputes having been placed on administrative leave for a second time, *see* Opp'n Part I ¶¶ 11, 16, availed herself of the opportunity to submit a written response, stating:

> [The child] was not staying in [her] bed during nap time. When I entered the classroom at 2pm, I tried to offer [] 3 CHOICES i.e. read a book in bed, hibernate with [] soft toys or quietly rest body on bed and do not come out of bed. [The child] did not listen and started jumping around . . . . I told [the child] that [the child] is going to sit next to me and we will assume it's a cage meaning that we can not move from our spots.
>
> At 2.50 I started waking up the sleeping children one by one. I was busy with bed collection. [The child] came to me and said I need to pee. [The child] did not look like [the child] has bathroom needs but [the child] looked like [the child] just wants to skip to bathroom to play.
>
> I told [the child] in 5 mins everyone is going to bathroom so just wait for me. In mean while I was by the door while [the child] was by the bathroom while [the child] peed in[] pants. . . .
>
> It was an error of judgment . . . . [The child] just didn't seem like [she] is having a natural need. [She] never pays attention to teachers

> and just do what [the child] feels like doing. If [the child] had natural urge, I assumed . . . [the child] would run towards bathroom. But, [the child] didn't. [The child] was jumping on floor and the accident happened because of [the child's] non serious attitude towards instructions and playful behavior of not listening.
>
> I did not enforce any harsh language with [the child] and [the child] smiles all the time in my supervision. [The child] makes creative stories and I use words that [the child] uses in . . . stories so that I can talk to the child at Children's level.

DeMarco Decl., Ex. G. Plaintiff's response "did not raise any concerns of discrimination or retaliation." SMF ¶ 37.

Plaintiff since has described the incident as "pretend play." Opp'n Part II ¶ 5. According to plaintiff, there had been a "weeklong lesson plan on 'hibernation'" and the child was pretending to be "a bear in a cage, during nap time[.]" *Id.* ¶ 1; *see id.*, Decl. (ECF No. 12-1) ¶¶ 84-85, 93. Plaintiff also stated that she did not refuse to allow the child to use the bathroom. Opp'n Part II ¶ 7. Rather, this child, who "played with water causing danger of falling/slipping/injury," *id.*, was directed to line up with the other children for the bathroom, *see id*. Lastly, plaintiff asserted that she did not put a diaper on the child; her co-teacher did. *See id.* ¶ 8.

**4. Termination**

Bright Horizons deemed plaintiff's conduct in the January 2018 incident inappropriate, in violation of its policies and negatively impacting its business. *See* SMF ¶ 39. As a result, plaintiff's employment was terminated on January 31, 2018. *Id.* ¶ 40. Its termination letter in part stated:

> On January 25, 2018, concerns were raised around your interactions with a child in your classroom. Specifically concerns regarding denial of child's request to use the bathroom, in which the child urinated on herself. In addition to the denial request, you also did not follow the Bright Horizons Positive Guidance Policy and

> standards of appropriate redirection. Also, failing to communicate to the parents about the accidents at the end of the day.
>
> Bright Horizons conducted a full investigation and determined that Shah did not follow the Bright Horizons policies of Positive Guidance and appropriate language. Bright Horizons considers Shah's actions to demonstrate unsatisfactory job performance in the area of child interactions.

DeMarco Decl., Ex. H. DeMarco sent by email a copy of the termination letter and information about unemployment benefits. *See id.* ¶ 39; SMF ¶ 40. She also provided a letter dated February 1, 2018, verifying plaintiff's employment at IMF Child Care Center from September 18, 2017 through January 31, 2018. *See* SMF ¶ 41; Am. Compl., Ex. (ECF No. 1-3 at 50).

**5. Plaintiff's Pregnancy**

According to DeMarco, plaintiff did not inform DeMarco or Andrzejuk of her pregnancy until January 12, 2018. SMF ¶ 42. At that time, plaintiff was instructed "how to request a leave of absence for a maternity leave and other accommodations." *Id*. ¶ 43. Plaintiff did not request maternity leave, *id.*, and her requests for leave for doctor appointments on December 19, 2017, January 16, 2018 and January 29-31, 2018, were granted. *Id*. ¶ 44.

According to plaintiff, Bright Horizons learned of her pregnancy in November 2017, Opp'n Part I ¶ 33, when she delivered the news by undated text message to a coworker, *see id.*, Ex. 2, who allegedly shared the information with DeMarco, *see* Opp'n Part III ¶ 20. Alternatively, plaintiff stated that "DeMarco received confirmed knowledge of the pregnancy . . . between 9-12 January, 2018," Opp'n Part I ¶ 34, and that DeMarco "learned about the Plaintiff's conception" on or about December 9, 2017, *see* Opp'n Part II ¶ 13.

Plaintiff stated that she requested maternity leave on January 9, 2018, to begin on or about July 28, 2018. *See* Custodian Decl., Ex. D. And on the days immediately preceding termination, plaintiff had doctor appointments on January 17, 2018, January 30, 2018, and

January 31, 2018. *See* Opp'n Part II ¶ 17; *see id.*, Ex. H. She had a medical emergency on January 28, 2018, prompting plaintiff to go to a hospital emergency room. *See* Opp'n Part II ¶ 16.

**B. Administrative Proceedings**

Plaintiff brought a charge of discrimination to the District of Columbia Office of Human Rights ("OHR") alleging retaliation and discrimination based on sex. SMF ¶ 45. The particulars of plaintiff's charge included the following:

> I believe Respondent retaliated against me for requesting a pregnancy accommodation on December 19, 2017 and January 9, 2018 because Respondent terminated me on January 31, 2018.
>
> On or about December 19, 2017, January 15 and January 29-31, 2018 I requested and was granted leave to attend doctor's appointments for my pregnancy. On January 9, 2018 I requested maternity leave from July 27, 2018 through six months from that date. On January 31, 2018 my employment was terminated with the Respondent, the reason was I "did not have positive interactions with children".
>
> Therefore, I charge Respondent with unlawful discriminatory acts in violation of Protecting Pregnant Workers Fairness Act of 2014.

Custodian Decl., Ex. D at 1. Plaintiff also claimed that Bright Horizons violated Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act. *See id.*, Ex. D at 2. On April 26, 2018, plaintiff perfected two complaints designated OHR complaint 18-295-PPWFA alleging violation of the Protecting Pregnant Workers Fairness Act and OHR complaint 18-296-P(CN) alleging discrimination based on sex in violation of the District of Columbia Human Rights Act. *See* Am. Compl., Ex. (ECF No. 1-3 at 98-101).

Meanwhile, on May 1, 2018, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). SMF ¶ 47; *see generally* Opp'n Part III, Ex. A. EEOC issued a right to sue letter on May 29, 2018. *See* Custodian Decl., Ex. F.

OHR interviewed plaintiff on December 17, 2018, at which time OHR learned of plaintiff's EEOC charge. Custodian Decl., Ex. E at 2. Upon review of the EEOC charge and the two OHR complaints, OHR determined that the charges were substantially similar, and dismissed the OHR charges without prejudice for administrative convenience on March 1, 2019. SMF ¶ 46; *see* Am. Compl., Ex. (ECF No. 1-3 at 98-101). OHR determined that plaintiff would have "the opportunity to seek full resolution of all complaints in an appropriate forum" since EEOC issued its right to sue letter. Custodian Decl., Ex. E at 2. OHR denied plaintiff's motion to reopen OHR complaint 18-295-PPWFA on January 9, 2020. *See* Mot. to Remand and for Oral Hearing, Ex. 1 (ECF No. 16-1 at 2-6).

**C. Plaintiff's Complaint, as Amended**

Plaintiff, proceeding *pro se* and *in forma pauperis*, initiated a lawsuit against Bright Horizons in the Superior Court of the District of Columbia on December 2, 2019. Her complaint read:

> Employer fired me on the day of prenatal appointment on 31st Jan, 2018 when I requested pregnancy accommodation on Mon 29th Jan, 2018 and the employer refuses to re-employ . . . me even though I have delivered the baby. I'm subjected to adverse actions in employment, suffered pain and undue financial hardship due to unfair, illegal, without cause termination due to getting pregnant I'm treated differently.

Compl. at 1. On December 28, 2019, plaintiff amended her complaint, alleging:

> BRIANNA fired me on the day of Prenatal appointment in voilation [sic] to DCFMLA and PDA (1964) and she refused to make reasonable accommodation for birth related complication. She took Adverse Action against my use of sick leave to recover from vomiting, back pain, inability to walk which was resulted from an ER visit on Sunday 29th Jan, 2018 in violation to DC Law 32 Labor Chapt 12 A which accommodates such complications of a pregnant woman. BRIANNA fail to issue notice of rights to me when I disclosed pregnancy (32-1231.04 violation). I'm harassed throughout employment and made a victim of discrimination. No

> inquiry details are shared with me during investigation, to create false reason to fire me.

Am. Compl. at 1. The amended complaint named six additional defendants: Brianna DeMarco, Christian Aversano, Agnieszka Andrzejuk, Kerri Turner[5], Matthew E. Christoph, Esq., and Kiara Vaughn.[6]

On January 9, 2020, defendants removed this action under 28 U.S.C. § 1367(a) regarding her federal claims, and under 28 U.S.C. § 1441(c) regarding the District of Columbia law claims over which this Court may exercise supplemental jurisdiction. *See* Notice of Removal ¶¶ 9-10.

## II. DISCUSSION

The complaint, as amended, reasonably is construed as one raising claims under the Pregnancy Discrimination Act ("PDA"), *see* 42 U.S.C. § 2000e *et seq.*, the District of Columbia Family Medical Leave Act ("DCFMLA"), *see* D.C. Code § 32-501 *et seq.*, and the Protecting Pregnant Workers Fairness Act ("PPWFA"), *see* D.C. Code § 32-1231.01 *et seq.* Defendants move to dismiss or for summary judgment under Federal Rules of Civil Procedure 8, 12(b) and 56.

### A. Standards of Review

#### 1. Dismissal Under Rules 8(a) and 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It also "demands more than an unadorned, the-defendant-unlawfully-

---

[5] Kerri is the correct spelling of the first name of the defendant listed "Kerry Turner" in the amended complaint. *See* Defs.' Mem. at 15.

[6] Kiara Vaughan is the correct name of the defendant listed as "KEIARA (kitchen staff) Unknown" in the caption of the amended complaint. *See* Motion for Extension of Time for Serving Defendants (ECF No. 15).

harmed-me accusation." *Cheeks v. Fort Myer Construction Corp.*, 71 F. Supp. 3d 163, 168 (D.D.C. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint's factual allegations must "'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (ellipses in original). In other words, a plaintiff must plead sufficient factual content to provide each defendant with "fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of *res judicata* is applicable." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the ground that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint survives such a motion if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While "detailed factual allegations" are not required, *Twombly*, 550 U.S. at 555; *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary[.]"), a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678; *see Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012).

A complaint drafted by a *pro se* party is held to a less stringent standard than would be applied to a complaint drafted by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the Court's duty to liberally construe a *pro se* party's submission is not "a license to

ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009). The Court should not "rewrite a petition to include claims that were never presented," *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), or "conjure up and decide issues never fairly presented to [the Court,]" *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985). But the Court must consider not only the factual allegations of the complaint, but also a *pro se* plaintiff's subsequent submissions. *See Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (noting "the district court's obligation to construe a pro se plaintiff's filings liberally, and to consider his filings as a whole before dismissing a complaint").

**2. Summary Judgment Under Rule 56**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d

1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

**B. Adequacy of the Complaint As Against the Individual Defendants**

Plaintiff's amended complaint names six individual defendants in its caption: DeMarco, Andrzejuk, Aversano, Turner, Christoph and Vaughan. The body of the amended complaint, however, mentions only one, Brianna DeMarco. DeMarco argues that the amended complaint as against her must be dismissed because it "includes little more than a conclusory accusation," yet it "is unclear from the face of the claim what legal violation . . . DeMarco allegedly committed." Defs.' Mem. of P. & A. in Support of [their] Mot. to Dismiss or in the Alternative for Summ. J. (ECF No. 6-2, "Defs.' Mem.") at 15. The remaining individual defendants, who are mentioned only in the caption of the amended complaint, argue that the amended complaint must be dismissed because it "fails include a single factual allegation, let alone legal conclusion, about [them]." *Id*. Their point is well taken. The complaint, as amended, alleges no facts from which the Court reasonably might infer that any of the individual defendants violated the PDA, the DCFMLA or the PPWFA.

**C. Bright Horizons' Proffered Reason for Plaintiff's Termination**

In circumstances where a plaintiff cannot present direct evidence of discrimination, she may proceed by applying the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, ___, 135 S. Ct. 1338, 1353 (2015); *Maldonado v. U.S. Bank*, 186 F.3d 759, 763 (7th Cir. 1999) (applying *McDonnell Douglas* framework to pregnancy discrimination case); *Edmonds v. Engility Corp.*,

82 F. Supp. 3d 337, 341 (D.D.C. 2015) (noting that courts "generally apply the burden-shifting analysis set forth in *McDonnell Douglas Corp.* to Title VII, FMLA and DCFMLA claims"), *aff'd*, No. 15-7035 (D.C. Cir. Jan. 21, 2016).

"To establish a *prima facie* case of discrimination based on pregnancy, a plaintiff must show that: (1) she was pregnant and/or subject to a pregnancy-related condition; (2) she was qualified for the position at issue; (3) she was affected by an adverse employment action; and (4) the employment action occurred under circumstances that give rise to an inference of discrimination." *Milliner v. District of Columbia*, 932 F. Supp. 345, 350 (D.D.C. 1996) (citations and internal quotation marks omitted). She "may establish a prima facie case by 'showing actions taken by the employer from which one can infer . . . that it is more likely than not that such actions were based on a discriminatory criterion illegal under'' Title VII. *Young*, 135 S. Ct. at 1353-54 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978)); *see Allen-Brown v. District of Columbia*, 174 F. Supp. 3d 463, 473 (D.D.C. 2016) (applying *McDonnell Douglas* framework to case alleging a discriminatory failure to accommodate under the PDA). "The function of the prima facie case is to trigger the employer's burden to come forward with its actual legitimate, non-retaliatory reason for the challenged action." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015).

When on summary judgment "the employer proffers a non-retaliatory reason for the challenged employment action, the burden-shifting framework falls away, and the 'central question' becomes whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee.'" *Id.* (quoting *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (bracketed language omitted)). At this

juncture, a plaintiff must produce "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (citing *Brady*, 520 F.3d 494); *see Allen-Brown*, 174 F. Supp. 3d at 475.

The parties do not dispute that that plaintiff became pregnant while employed at Bright Horizons, although there remains a question of fact as to the date on which Bright Horizons was informed of her pregnancy. And without question, termination is an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (stating that adverse employment actions under Title VII include termination of employment). Plaintiff cannot succeed in this case because she does not demonstrate that her termination occurred under circumstances that give rise to an inference of discrimination based on her pregnancy, or that Bright Horizons' proffered reason for terminating her employment is pretext for discrimination.

Bright Horizons terminated plaintiff's employment "based on information uncovered during an investigation into the concerns raised about [plaintiff] by the parent of a child under her care[,]" DeMarco Decl. ¶ 36, namely the January incident described above. Plaintiff "caged" a child and ignored the child's requests to use the restroom, causing the child to wet herself and prompting the child's parents to disenroll her from IMF Child Care Center. *See* SMF ¶¶ 32-33, 38; DeMarco Decl. ¶¶ 27-29. Plaintiff's written response to the parent's complaint admitted to "an error in judgment" in disregarding the child's need to use the restroom, and at the same time, she attributed the toileting accident to the child's "non serious attitude towards instructions and playful behavior of not listening." DeMarco Decl., Ex. G. Bright Horizons deemed plaintiff's "behavior inappropriate, in violation of [its] policies and expectations, and impacting on [its]

ability to conduct its business," and terminated her for these reasons. SMF ¶ 39; *see* DeMarco Decl. ¶ 35.

The burden now shifts to plaintiff to provide sufficient evidence from which a reasonable jury could find Bright Horizons' stated reason for termination was pretext for discrimination. *See Brady*, 520 F.3d at 494. Upon careful consideration of plaintiff's multiple submissions, the Court concludes that her effort to rebut Bright Horizons' factual proffer is woefully insufficient.

First, plaintiff flatly opposes Bright Horizons' assertions of fact without herself showing that there is a genuine issue for trial. For example, plaintiff "challenges the truth of the facts mentioned by . . . DeMarco and . . . Andrzejuk completely." Opp'n Part I ¶ 1. As the non-moving party, plaintiff "cannot rely on 'mere allegations or denials . . . , but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." *Liberty Lobby*, 477 U.S. at 248 (citation omitted). Nor is it sufficient to assert, without support, that "pregnancy was the sole reason for two Adverse Actions taken against [her] in less than [a] two month[] period." Opp'n Part II ¶ 20. And plaintiff is no more successful when making conclusory statements, such as her assertion that defendants took action "solely in retaliation to pregnancy of the Plaintiff and not the Positive Guidance Policy of the Company." Opp'n Part III ¶ 19.

Even where plaintiff points to materials in the record to support her position, the materials are not relevant to the matter at issue, that is, whether Bright Horizons' proffered rationale for terminating her employment is pretext for discrimination. For example, plaintiff refers to "unambiguous direct evidence of pretext," in the form of voice recordings and text messages, Opp'n Part III ¶ 12 (emphasis removed); *see* Opp'n Part II ¶ 21, yet does not produce such support in her oppositions to defendants' motion. Although she submits a document described as a transcript of a telephone conversation with DeMarco, *see generally* Opp'n Part I,

Ex. 9, the conversation pertained to the method by which plaintiff must request leave, that is, through the Time Express system rather than by email, whether the request is for prenatal care or for some other purpose. Similarly, plaintiff points to payroll records, *see* Opp'n Part II, Ex. 3, but the fact that plaintiff received a salary while employed at Bright Horizons, *see* Opp'n Part I ¶ 10, is not relevant Bright Horizons' termination decision. Plaintiff also points to text messages, *see* Opp'n Part I, Ex. 2, to support her claim that management was aware of her pregnancy as early as November 2017, but these messages neither identify the person(s) with whom plaintiff was communicating nor establish the date(s) on which the messages were sent.

Plaintiff may be operating under the assumption that her complaint need not set forth all of the claims she intends to bring. *See* Opp'n Part I ¶ 29 ("Failure to write the complaint correctly, does not mean all claims of the Plaintiff are not based in law. Some claims may not even be stated in the complaint, but Plaintiff has suffered remarkable damages at the hands of Defendants."). Further, she proceeds as if "[t]he specifics of the complaint" could be "orally delivered" in court. *Id.* ¶ 32. Plaintiff is mistaken, however, and now is the time to demonstrate that there exists an issue suitable for trial.[7] "[C]onclusory allegations and unsubstantiated speculation, whether in the form of a plaintiff's own testimony or other evidence submitted by a plaintiff to oppose a summary judgment motion, do not create genuine issues of material fact." *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 61 (D.D.C. 2015) (citation and internal quotation marks omitted), *aff'd*, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015).

---

[7] The parties did not engage in formal discovery before defendants filed their dispositive motion. Plaintiff made an effort to obtain certain documents from Bright Horizons in February 2020, and Bright Horizons declined to produce them absent a Court Order. *See generally* Pl.'s Mot. for Continuance and ECF Filing, Ex. A. By that time, plaintiff had submitted three responses to defendants' motion, and presumably did not require these documents in order to file her opposition.

Here, plaintiff fails to produce sufficient evidence for a reasonable jury to find that Bright Horizons' proffered nondiscriminatory reason for her termination was not the actual reason for the adverse action taken and that Bright Horizon intentionally discriminated against her because of her pregnancy.

**III. CONCLUSION**

The Court concludes that plaintiff's complaint, as amended, fails to state a claim against the individual defendants upon which relief can be granted. Further, the Court concludes that defendants proffered a legitimate, nondiscriminatory reason for plaintiff's termination which plaintiff fails to rebut. Accordingly, the Court grants summary judgment for defendants and denies plaintiff's motions as moot. An Order is issued separately.

DATE: September 14, 2020

/s/
COLLEEN KOLLAR KOTELLY
United States District Court Judge